### Victor Coal Company v. Charles Dunbar, by next Friend.

1. REMOVAL OF DANGER—*how question of reasonable time for, determined.* What is a reasonable time during which the servant may continue in his employment under a promise of his employer to remove the danger complained of, is, ordinarily, a question for the jury, and in the determination of the question all the facts and circumstances of the case are to be taken into consideration.

Action on the case for personal injuries. Appeal from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the November term, 1904. Affirmed. Opinion filed April 20, 1905.

CONKLING & IRWIN, for appellant.

J. A. BLOOMINGSTON, for appellee.

MR. JUSTICE GEST delivered the opinion of the court.

Reversal of this judgment is asked for upon two grounds and only two grounds, one of which is that the trial court erred in refusing at the close of the proof in chief on the part of appellee, and again at the close of all the proof, to

instruct the jury to find the defendant, the appellant, not guilty; and the other of which is that the verdict is against the preponderance of the evidence. The first proposition is that the record shows, as a matter of law, that a verdict for the plaintiff cannot be sustained, and the second is that while there may be some evidence to sustain his case, the greater weight is against it. There is no complaint of the ruling of the court in admitting and refusing evidence offered, nor the action of the court in giving or refusing instructions other than as above stated, nor as to the amount of the verdict. The sole complaint is with regard to the existence and weight of evidence.

The suit is in case for a personal injury received by plaintiff while in the employment of defendant as a mule driver in the coal mine of defendant. Appellee was eighteen years of age at the time he was injured. The declaration charges that the mule which plaintiff was directed to drive was vicious and not reasonably safe to drive, that plaintiff complained to the pit boss of the vicious, violent and dangerous character of the mule and was by him promised another and a safe one, and thereupon by reason of the promises made to him, he continued for a time to drive the mule, and while so doing and himself exercising due care, it ran away, threw him out of the car, and injured him so that it became necessary to amputate his left leg above the knee.

It is urged by appellant that the proof shows conclusively that the plaintiff had assumed all risk of injury to himself from the vicious character of the mule, and that therefore the refused instruction should have been given. The ground for the argument that the plaintiff had assumed the risk is in substance, though not in terms, that he had been promised another mule so many times by the pit boss and without fulfillment, that he must have known that no reliance was to be placed on the promises; must have known that they were made with no intention of fulfillment; must have known that they were false; that consequently plaintiff did not rely on them, was not authorized to rely on them, and

therefore was proceeding at his own risk and has nobody to blame but himself. The argument under the circumstances shown by the evidence is not very persuasive. The evidence does show that the plaintiff complained daily to the pit boss for several days before the accident, of the vicious character of the mule, that he was always promised another, that on the day of the injury he again complained to the mine manager and was told to go on and he would be furnished with another, and that he thereupon continued to drive it that day still with the expectation of getting another, and on his last trip for the day suffered his injury. Appellant in its argument asks the question : "What, then, was the time during which appellee was warranted in expecting a performance of the promise of appellant?" We have been furnished by appellant with argument upon this one question of fourteen pages in which many cases of divers jurisdictions are cited and quoted, and it is argued that this not being a case of making repairs in machinery, tools and the like, the promise could have been fulfilled immediately by giving appellee another mule, yet the proof shows that all the mules defendant had on hand were then in actual service. Defendant knew that the only way to get another mule for plaintiff to drive was to first get another mule, and we must presume that it would take some period of time to get another fit to drive in the strange surroundings of a coal mine. It is also argued that "the rule of exempting an employee from assuming the risk when a promise to repair is made, does not apply in ordinary labor which only requires the use of implements and instrumentalities with which the employee is entirely familiar," and we are cited to cases where the servant injured was engaged in ordinary labor and using tools of simple construction as authority to be applied in this case where the tool to be used was a mule. We are not inclined to spend time in discussing the question whether a vicious mule is a simple tool. So far as we are advised no ordinary man has ever become "entirely familiar" with the creature known as mule. It is not argued or claimed that the danger in driving the mule was so great that no reasonably prudent person would have un-

Victor Coal Co. v. Dunbar.

dertaken to do so.  That question does not arise.  What is a reasonable time during which the servant may continue in his employment under a promise of his employer to remove the danger complained of, is ordinarily a question for the jury, and in the determination of the question all the facts and circumstances of the particular case are to be taken into consideration.  No two cases are alike.  What might be a reasonable time under one state of facts might be wholly unreasonable under another and different one. The most that can be said is that in each case it must be reasonable, and it must be left to be applied whether by court or jury to cases as they arise in such manner as reason and justice seem to require.  After careful perusal of the evidence in this cause we are not of the opinion that the court erred in refusing to instruct the jury to find for the defendant.  On the contrary, it is our opinion that so to instruct would have been error.  It would serve no useful purpose for us to quote at length the evidence in this record pertinent to the question whether the plaintiff was justified in relying on defendant's promise to furnish another mule.  Indeed, it would be difficult to give a correct idea of that proof without furnishing substantially the evidence in the case.  In our judgment, under the evidence disclosed by this record, the plaintiff was not unwarranted in relying upon the promises made to him.

The second ground upon which it is claimed the judgment should be reversed is, that the verdict is contrary to the weight of the evidence.  This record is like most every other containing the evidence offered in a trial by jury, in this, that the evidence is conflicting.  In such case we cannot justly reverse upon the ground now urged unless it clearly appears that the preponderance of the evidence is in favor of the defeated party.  The mere printed words give but a very imperfect basis upon which to estimate the value of the testimony.  The evidence appears to justify the verdict.  We find no error of law.

The judgment will be affirmed.

*Affirmed.*